Case 5:99-cv-02718-SLB   Document 20   Filed 09/06/00   Page 1 of 12

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SEP -6

U.S. DISTRICT COURT
N.D. OF AL.

| | | |
|---|---|---|
| **CLAUDE BURNETT,** | } | |
| Plaintiff, | } | |
| v. | } | CASE NO. CV 99-B-2718-NE |
| **ROGER PRIDMORE and ALABAMA NATIONAL GUARD,** | } | |
| Defendants. | } | |

**ENTERED**



## MEMORANDUM OPINION

This case is before the court on Motions to Dismiss filed separately, but on the same grounds, by defendants Roger Pridmore ("Pridmore") and the Alabama National Guard ("National Guard") (collectively "defendants"). Plaintiff Claude Burnett ("plaintiff" or "Burnett") brought this case against defendants alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as well as of 42 U.S.C. §§ 1981 ("section 1981"), 1983 ("section 1983"), and 1985 ("section 1985"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendants' motions are due to be granted.

### I. FACTS

Plaintiff, an African American, is employed by defendant Alabama National Guard under the command of defendant Pridmore. (Compl. ¶ 3(a)-(c); Pl.'s Mem. in Supp. of Resp. to Def.'s Mot. to Dismiss ("Pl.'s Brief") at 1-2.) Plaintiff, along with other members of his squad, submitted an application for a vacant Command Sergeant Major position in the 279th Signal Battalion. (Compl. ¶ 3(a); Pl.'s Brief at 1-2.) According to plaintiff, Pridmore forwarded the

applications of all candidates in his command with the exception of plaintiff's. (Compl. ¶ 3(a); Pl.'s Brief at 1-2.)

Plaintiff further alleges that Pridmore provided these candidates with recommendations even though some had less than two years of time in grade. (Compl. ¶ 3(b); Pl.'s Brief at 1.) Plaintiff claims that he has an impeccable military record, replete with significant accomplishments. (Pl.'s Brief at 1.) Plaintiff contends that all candidates whose applications were forwarded by Pridmore were white; plaintiff was the sole black applicant. (Compl. ¶ 3(b); Pl.'s Brief at 1.)

Plaintiff alleges that he notified 142nd Signal Brigade of Pridmore's actions, "yet they took no action." (Compl. at ¶ 3(c).) Plaintiff also claims that the Command Sergeant Major and members of the staff of this Brigade "were aware of this problem." (*Id.*) Plaintiff admits that Pridmore had discretion to choose which candidates' applications to forward, based on the candidates's performance and qualifications. (Pl.'s Brief at 1.)

## II. DISCUSSION

**A.    Standard for Motion to Dismiss.**

In ruling on a motion to dismiss, the court must accept the allegations of the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.*; *see also Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976).

In this case, both defendants move to dismiss on the same grounds: that Pridmore's decision to not forward plaintiff's application is a nonjusticiable military matter. (Nat'l Guard's Mot. to Dismiss ¶¶ 3-5; Pridmore's Mot. to Dismiss ¶¶ 3-5.)

**B.    Title VII Claims**

Uniformed members of the military, including members of the National Guard, are subject to the military exception to Title VII. *See Doe v. Garrett*, 903 F.2d 1455, 1458 (noting the "well-established case law excluding uniformed military personnel from protection under Title VII"); *Stinson v. Hornsby*, 821 F. 2d 1537, 1540 (holding that where a member of the National Guard is more military than civilian, "no Title VII action may be brought").

In *Stinson*, the Eleventh Circuit considered an action brought by a member of the Alabama National Guard alleging that he was discriminated against in promotion and discharge because of his race in violation of Title VII, section 1981, and section 1983. *Stinson*, 821 F. 3d at 1538-39. In addressing the Title VII claim, the court found:

> Stinson, however, was a uniformed member of, and on full-time military duty with, the Alabama National Guard. Title 10 U.S.C. § 101 defines "armed forces" to include the Army, Navy, Air Force, Marine Corps, and Coast Guard. Under 10 U.S.C. § 3062(c)(1), the Army consists of:
>
>> 1. The Regular Army, the Army National Guard of the United States, the Army National Guard while in the service of the United States, and the Army Reserves.
>
> Other factors support the district court's determination that Stinson, for purposes of Title VII, should be considered military personnel, rather than an employee of the state of Alabama: (1) Stinson wore a military uniform during periods of active duty and/or training; (2) he served on full-time military duty; (3) he was paid by the federal

> government and not by the state of Alabama; and (4) he was
> subject to military discipline on a daily basis.
>
> Thus, we conclude that Stinson, a member of the National Guard,
> is not an employee of the state of Alabama for purposes of Title
> VII.
>
> . . . .
>
> Our holding today is that members of the National Guard are
> generally employees of the state; but where the facts indicate that
> the person is on full-time military duty and other factors indicate
> that the person is more military than civilian, no Title VII action
> may be brought.

*Id.* at 1539-40, 1540-41.

In this case, defendants maintain that Burnett's Title VII claims are barred. "*Stinson* controls in this case because Burnett's claims are exclusively military. He sought promotion from one enlisted grade to a higher enlisted grade so that he could fill a specific military position, Command Sergeant Major of the 279th Battalion." (Def.'s [National Guard's] Mem. in Supp. of Mot. to Dismiss at 3.)

In response, plaintiff distinguishes *Stinson* in three respects. First, plaintiff contends that unlike Stinson, he "is not deemed to be on active duty except for the periods of annual training, which last two weeks each year. All other times, Burnett is deemed to be on reserve duty." (Pl.'s Brief at 3-4.) Second, plaintiff contends that unlike Stinson, he wears his uniform during periods when he is not on active duty, such as drill periods. (*Id.* at 4.) Third, plaintiff contends that while the federal government compensates him for the two weeks he is on active duty, the rest of the time "his compensation comes from a fund which is jointly funded by both the State of Alabama and the federal government." (*Id.*)

This court is unpersuaded by plaintiff's arguments. Binding precedent shows that National Guard positions of more questionable military status have been held to be military in nature. *See NeSmith v. Fulton*, 615 F. 2d 196, 201 (5th Cir. 1980) (dismissing a civilian technician's claim of discriminatory termination from the National Guard because it "involves an internal military matter and implicates judicial concern over inappropriate intrusion into such transactions."). Further, by applying for promotion to a Command Sergeant Major position, plaintiff was undisputedly acting in his military capacity and engaging in military activity.

Thus, the court is of the opinion that plaintiff's position and the challenged activity are both military in nature. Consequently, plaintiff's section Title VII claims are due to be dismissed for failure to state a justiciable claim.[1]

C.  **Section 1981, 1983, and 1985 Claims**

The threshold issue in an analysis of plaintiff's section 1981, 1983, and 1985 claims is determining which legal standard to apply. The Supreme Court, in *Feres v. United States*, 340 U.S. 135 (1950), set forth an "incident to military service" standard applicable to *Bivens*-type actions. *See United States v. Stanley*, 483 U.S. 669 (1987); *Chappell v. Wallace*, 462 U.S. 296 (1983). However, the two-step evaluation developed by the Fifth Circuit in *Mindes v. Seamon*, 453 F. 2d 197, 201 (5th Cir. 1971), may also be applicable to plaintiff's section 1981, 1983, and 1985 claims.

---

[1]To the extent plaintiff seeks Title VII relief against Pridmore, the claim is due to be dismissed because such relief is unavailable. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (no individual liability under Title VII);

### 1. Development of the Feres/Chappell/Stanley Standard

In *Feres*, the Supreme Court held that the government was not liable under the Federal Tort Claims Act for injuries to servicemen "where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146.

Thereafter, in *Chappell*, the Supreme Court addressed a *Bivens*-type action by five Navy enlisted men seeking damage and injunctive relief for alleged race discrimination in violation of their constitutional rights. *Chappell*, 462 U.S. at 297. Relying partially on *Feres*, the Court bluntly and broadly held that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Id.* at 305.

In *Stanley*, the Supreme Court handed down a decision in yet another *Bivens*-type action by a member of the military. *Stanley*, 483 U.S. 669. The Court held that *Chappell* did not rule out all actions by enlisted men against the government; rather, the proper test for *Bivens*-type actions was whether the injuries "arise out of or are in the course of activity incident to service." *Id.* at 684 (quoting *Feres*, 340 U.S. at 146).

### 2. The Mindes Two-Step

After the Supreme Court set forth its "incident to service" standard in *Feres*, but before the standard was further clarified in *Chappell* and *Stanley*, the former Fifth Circuit considered an action brought by an Air Force Captain seeking declaratory and injunctive relief from an adverse personnel report. *Mindes*, 453 F. 2d at 198. Instead of using the *Feres* standard, the *Mindes* court established a two-step evaluation to determine if a court should review internal military

6

affairs. *Id.* at 201-02.[2] Thereafter, the Eleventh Circuit followed *Mindes* as binding precedent. *Rucker v. Secretary of the Army*, 702 F. 2d 966, 968 (11th Cir. 1993) (citing *Bonner v. City of Pritchard*, 661 F. 2d 1206 (11th Cir. 1981)).

After *Chappell*, and one month after *Stanley*, the Eleventh Circuit considered an action by a discharged member of the Alabama National Guard alleging discrimination based on his race in violation of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. *Stinson v. Hornsby*, 821 F. 2d 1537, 1539 (11th Cir. 1987). The *Stinson* court recognized that Title VII actions were foreclosed to members of the military and the National Guard, at least when their positions were primarily military in nature. *Id.* at 1539-40.

The *Stinson* court further held, however, that *Chappell* did not foreclose all causes of action, and that "uniformed members of the armed forces may assert that their constitutional and statutory rights have been violated . . . ." *Id.* at 140 (quoting *Gonzales v. Dept. of the Army*, 718 F. 2d 926, 929 (9th Cir. 1983). Thus, as to Stinson's claims under sections 1981 and 1983, the Eleventh Circuit remanded the case for further analysis under the *Mindes* two-step evaluation. *Id.* at 1540-41. The court specifically stated: "We find the approach adopted in *Mindes* binding

---

[2]"The first step requires the court contemplating review to determine whether the plaintiff has alleged that the military acted contrary to the Constitution, applicable statutes, or its own regulations and whether the plaintiff has exhausted his administrative remedies. Once that determination is made, the court must then balance the substance of the allegations against the policy reasons that militate against review based on four factors:
    1.    the nature and strength of the plaintiff's challenge to the military function; and
    2.    The potential injury to the plaintiff if review were denied;
    3.    the type and degree of anticipated interference with the military function; and
    4.    the extent to which the exercise of military expertise or discretion is involved."
*Rucker v. Secretary of the Army*, 702 F.2d 966, 969-70 (11th Cir. 1983) (citing *Mindes*, 453 F. 2d at 201-02).

in this action." *Id.* at 1540. The Eleventh Circuit did not mention the *Stanley* decision in its opinion.

Thereafter, the Eleventh Circuit considered the claim of an HIV positive member of the Naval Reserve against the Navy and the Naval Reserve alleging violations of the Rehabilitation Act and the Due Process Clause. *Doe v. Garrett*, 903 F. 2d 1455 (11th Cir. 1990). The Eleventh Circuit recognized the "well-established caselaw excluding military personnel from protection under Title VII of the Civil Rights Act," *id.* at 1458, and applied that rationale in affirming the district court's dismissal of plaintiff's Rehabilitation Act claims. *Id.* at 1458-62. The court also affirmed the dismissal of the plaintiff's due process claim on the basis that plaintiff did not have a protected property or liberty interest. *Id.* at 1462-63.

In the alternative, the court examined the district court's finding that the due process claim was not reviewable under *Mindes*. *Id.* The court found that there was "nothing objectionable in the district court's application of *Mindes*, and we think it clear that under *Mindes* factors one and three, at least, review of Doe's due process claim in this case is disfavored." *Id.* at 1463. In a footnote, however, the Eleventh Circuit expanded its view of the *Mindes* test:

> This Court in *Stinson* took the rather severe approach of reversing and remanding the district court's dismissal on the merits of a constitutional claim because the district court had not applied *Mindes* to determine whether the claim was reviewable in the first place. We reversed despite the fact that the issue on the merits was quite simple, the district court's disposition appeared plainly correct, and the district court's consideration of *Mindes* on remand could not possibly have led to a different result. *See Stinson*, 821 F.2d at 1541-43 (Henderson, J., specially concurring) (criticizing *Mindes* and suggesting disposition of plainly meritless constitutional claims "without resort to the cumbersome *Mindes* analysis"); *accord Watson v. Arkansas National Guard*, 886 F.2d 1004, 1009-10 (8th Cir.1989).

8

> We note that despite the apparent assumption of *Stinson*, this Court
> and its predecessor have not always applied *Mindes* in
> constitutional challenges to military personnel decisions. The
> former Fifth Circuit, for example, failed to apply *Mindes* in *Sims v.
> Fox*, [505 F.2d 857 (5th Cir. 1974) (en banc)], decided only three
> years after *Mindes*. Furthermore, while *Mindes* refers to statutory
> as well as constitutional claims, it appears well established that
> *Mindes* need not be applied before reaching the merits of a
> statutory claim against the military. *See Stinson*, 821 F.2d at 1539-
> 40; *Smith*, 763 F.2d at 1324-25 (both rejecting statutory claims
> without resort to *Mindes* analysis) . . . .

*Id.* at 1446 n.15.

This was the last mention of *Mindes* by the Eleventh Circuit. Since *Doe v. Garrett*, the Eleventh Circuit has not addressed a discrimination claim involving a member of the uniformed services. In addressing all other federal statutory and constitutional claims involving members of the uniformed services, the Eleventh Circuit has consistently relied on the "incident to service" standard set forth in *Feres, Chappell,* and *Stanley. See, e.g., Whitley v. United States*, 170 F.3d 1061, 1068 (11th Cir. 1999); *Jimenez v. United States*, 158 F.3d 1228, 1229 (11th Cir. 1998); *Kitowski v. United States*, 931 F. 2d 1526, 1529 (11th Cir. 1991).

### 3. Feres/Chappel/Stanley or Mindes?

Since *Stanley*, other Circuits addressing discrimination, civil rights claims and other constitutional claims by members of the military, including the National Guard, have held that the *Feres/Chappell/Stanley* "incident to service" standard is the proper one to follow in determining the justiciability of such claims in the military context, abrogating the *Mindes* approach. *Wright*, 5 F. 3d at 590, n.6; *Maddick v. United States*, 978 F. 2d 614, 615 (10th Cir. 1992); *Watson v. Arkansas National Guard*, 886 F. 2d 1004, 1006-07, 1009-10 (8th Cir. 1989). Moreover, the architect of the *Mindes* two-step, the Fifth Circuit, has abandoned that approach as

9

well. *Crawford v. Texas Army Nat'l Guard*, 794 F. 2d 1034, 1036 (5th Cir. 1986); *see also Wright*, 5 F.3d at 590 n.6 ("*Mindes* has been banished from its homeland").

In light of these post-*Stinson* developments, and in consideration of the Eleventh Circuit's stated reservations regarding the viability of *Mindes*, the court is of the opinion that the "incident to service" standard is the correct rule to apply when determining whether an activity in the uniformed services is military in nature, rendering it nonjusticiable. *See Neal v. Alabama Nat'l Guard*, 1997 WL 114910, *2 - *4 (M.D. Ala. March 13, 1997) (reaching the same conclusion).

### 4. Application of the Feres/Chappell/Stanley Standard

In *Kitowski*, the Eleventh Circuit set forth three factors to examine when determining if a plaintiff's injuries "arise out of or are in the course of activity incident to military service" as set forth in *Feres*, *Chappell*, and *Stanley*: (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity the serviceman was engaged in at the time of the injury. *Kitowski*, 931 F.2d at 1528-29. Thus, the court must apply these factors to the challenged conduct to determine the justiciability of the claims.

In this case, the court is of the opinion that the claim is nonjusticiable. When plaintiff applied for the position and Pridmore decided not to forward the application, they both engaged in purely military activity. The place of the injury and the activity in question were clearly "incident to" plaintiff's military service. Given the undoubtedly military nature of the challenged activity, the court is of the opinion that plaintiff can prove no set of facts which would entitle him to relief. Thus, under the "incident to service" standard set forth *Feres*, *Chappell*, and *Stanley*, plaintiff's claims under sections 1981, 1983, and 1985 are due to be dismissed for failure to state a justiciable claim.

### 5. Application of the *Mindes* Two Step

The court is also of the opinion that even if the *Mindes* two-step applied, plaintiff's section 1981, 1983 and 1985 claims would be nonjusticiable. The threshold requirement of the test "requires the court contemplating review to determine whether the plaintiff has alleged that the military acted contrary to the Constitution, applicable statutes, or its own regulations and whether the plaintiff has exhausted his administrative remedies." *Rucker*, 702 F.2d at 969 (citing *Mindes*, 453 F. 2d at 201-02) (emphasis added). The court notes as a preliminary matter that plaintiff has failed to allege such exhaustion, providing alternative grounds for dismissing his claims.[3]

If plaintiff survives the threshold analysis, the court must "balance the substance of the allegations against the policy reasons that militate against review based on four factors:" (1) the nature and strength of the plaintiff's challenge to the military function; (2) the potential injury to the plaintiff if review were denied; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Rucker*, 702 F.2d at 969-70 (citing *Mindes*, 453 F. 2d at 201-02).

---

[3]Even if plaintiff could pursue a claim under Title VII, it would also be barred by his failure to exhaust administrative remedies. Section 717 of Title VII, 42 U.S.C. 2000e-16, is the "exclusive pre-emptive administrative and judicial remedy for the redress of federal employment discrimination." *Brown v. General Services Administration*, 425 U.S. 820, 829 (1976); *Canino v. United States Equal Employment Opportunity Commission*, 707 F.2d 468, 472 (11th Cir. 1983). Before an aggrieved employee may seek relief through the filing of a civil action in federal court, § 717(c) requires that the employee must first seek relief in the agency that has allegedly engaged in discrimination. *Brown v. GSA*, 425 U.S. at 832. This requirement is not a technicality; "[r]ather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C.Cir. 1983).

The court is of the opinion that factors one, three, and four of the second step of the *Mindes* test militate against review. Plaintiff's claims are tenuous (factor one),[4] the military nature of plaintiff's position and the challenged activity means that review of such claims would interfere with military function (factor two), and the challenged employment decision (promotion of members of the military) involves the exercise of military expertise and discretion (factor four). Thus, even under the suspect *Mindes* analysis, plaintiff's section 1981, 1983, and 1985 claims are due to be dismissed for failure to state a justiciable claim.

### III. CONCLUSION

Based upon the foregoing reasons, the court finds that both defendants' Motions to Dismiss are due to be granted. An Order consistent with this opinion will be entered contemporaneously herewith.

**DONE** this 6th day of September, 2000.

_____
**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[4] "An obviously tenuous claim of any sort must be weighted in favor of declining review." *Mindes*, 453 F. 2d at 201.